UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORREY LARSEN,<br><br>                               Plaintiff,<br><br>v.<br><br>REVERSE MORTGAGE SOLUTIONS, INC., et al.,<br><br>                               Defendants. | Case No.:  3:15-cv-01512-L-MDD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION [Doc. 13]** |

Pending before this Court is Defendants Reverse Mortgage Solution Inc. and Walter Investment Management Corporation's ("Defendants") Motion to Compel Torrey Larsen to submit his claims to arbitration.  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons stated below, the Court **GRANTS** Defendants' Motion.

//
//
//
//
//
//

## I. BACKGROUND

Plaintiff Torrey Larsen ("Larsen") is the former principal shareholder, President, and Chief Executive Officer of Defendant Security One Lending. On December 31, 2012, Defendant Walter Investment Management Corporation ("WIMC") entered into a stock purchase agreement pursuant to which it acquired Security One Lending. Subsequently, WIMC joined Security One Lending with Reverse Mortgage Solutions, Inc. ("RMS"), a wholly owned subsidiary of WIMC.

Larsen and Defendants entered into an employment agreement in connection with the sale of Security One Lending to WIMC. Under this agreement, Larsen agreed to continue working for Security One Lending after its acquisition by RMS. Larsen subsequently served as Executive Vice-President and President of Retail Lending. (Boyd Decl. [Doc. 13-2] ¶ 11.) In this role, he was in charge of all aspects of Security One Lending's national operations, including the overseeing of accounting, payroll, human resources, and the supervision of Distributed Retail Loan Officers. (Id.)

On March 30, 2013, Larsen signed an Employee Acknowledgment and Receipt Form. (Ex. B [Doc. 13-3].) The EARF, in relevant part, states

> I have received a copy of the 'Employee Handbook' . . .
>
> \*   \*   \*
>
> I acknowledge that I have read and understand the Employee Dispute Resolution Procedure contained in the Employee Handbook, including the Arbitration Agreement. I agree to the terms of the Arbitration Agreement. I acknowledge that the Arbitration Agreement is an enforceable contract; that I am waiving the right to pursue claims in court; and that I will accept an arbitrator's award as the final, binding and exclusive determination of all claims covered by the Arbitration Agreement.

(Id.)

The Arbitration Agreement contained in the Employee Handbook states

> In consideration of the establishment or the continuation of your at will employment, unless otherwise required by law, you agree that, except for worker's compensation or unemployment compensation benefit claims, any and all complaints, disputes, claims, or causes of action arising out of, or related to, your employment with the Company or the termination of your

> employment, including, but not limited to, all state and federal statutory employment claims, all contract claims, all tort claims, and all claims regarding the applicability or enforceability of this agreement by you to arbitrate, will be resolved by neutral, binding arbitration conducted by the National Arbitration Forum ("NAF"), under the *Code of Procedure* of the NAF effective at the time your claim is filed.  If the NAF is unable or unwilling to administer the arbitration of your claim, then you agree that the American Arbitration Association will conduct the arbitration.  Any arbitration hearing at which you appear will take place at a location near your residence. . .
>
> \*   \*   \*
>
> You acknowledge and agree that your employment with the Company involves interstate commerce and this agreement to arbitrate shall be subject to the Federal Arbitration Act, as amended or supplemented.
>
> \*   \*   \*
>
> You shall bear your own expenses of arbitration, except after you have paid the first $150 for any filing fee, the Company agrees to pay the remainder of the filing fee (up to that filing fee payable for a claim equal to one year's wages for the employee) and for the first two days of any arbitration hearing or session.
>
> \*   \*   \*
>
> YOU UNDERSTAND THAT, ABSENT THIS AGREEMENT TO ARBITRATE, YOU WOULD HAVE THE RIGHT TO SUE THE COMPANY IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT, BY ESTABLISHING OR CONTINUING THE EMPLOYMENT RELATIONSHIP, YOU GIVE UP THOSE RIGHTS AND AGREE TO RESOLVE ANY AND ALL CLAIMS BY ARBITRATION.
>
> \*   \*   \*
>
> This arbitration agreement shall survive, and continue to be effective after, the end of your employment relationship with the Company. If any provision of this arbitration agreement is determined to be void or unenforceable, such provision shall be severed and shall not affect the validity or enforceability of the remainder of this agreement.

(Ex. A [Doc. 13-3].)

In March of 2014, Larsen tendered his resignation, intending to voluntarily sever his employment relationship with Defendants.  (Larsen Decl. [Doc. 18-2] ¶ 8.)  However, in a subsequent agreement with Keith Anderson, the former Chief Operating Officer of WIMC, and Scott Clarke, the former President of RMS, Larsen withdrew his resignation.

Pursuant to this agreement, Larsen agreed to continue his employment with Defendants on a full time basis until May of 2014 and on a part time basis from June through December of 2014. (Id. ¶ 11.) This agreement provided that Larsen was to receive his full compensation through 2014, regardless of whether Defendants terminated his employment before that time. However, Larsen claims that Defendants terminated his employment before December 2014 and refused to provide the continued compensation the parties agreed upon.

Plaintiff filed the instant action on June 1, 2015, in California Superior Court, County of San Diego, alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) failure to pay wages in violation of California Labor Code Sections 202 and 204, (5) fraud, and (6) unfair business practices under California Business and Professions Code Section 17200. (See Notice of Removal [Doc. 1].) Defendants removed the action to this Court on July 9, 2015. (See Id.) On July 27, 2015 Defendants' counsel advised Larsen's counsel of his obligation to submit his claims to binding arbitration. (Quinn Decl. [Doc. 13-4] ¶ 3.) Plaintiffs' counsel declined to submit the matter to binding arbitration. (Id. at ¶ 6.) Accordingly, Defendants now move to compel arbitration. (See Defs.' Mot. [Doc. 13].) Larsen opposes. (See Opp'n [Doc. 18].)

## II. APPLICABILITY OF THE FEDERAL ARBITRATION ACT

The parties disagree as to whether the Federal Arbitration Act ("FAA") governs here. Outside of the maritime context, the FAA only governs motions to compel arbitration that involve a contract affecting interstate commerce. 9 U.S.C. § 2. *Citizens Bank v. Alafabco Inc.*, 539 U.S. 52, 56 (2003). Larsen argues his employment did not involve interstate commerce because he always worked in San Diego and he did not originate mortgage transactions across state lines. (Opp'n 4:1–20, 17:22–18:21.) The Court disagrees.

//

Even if a specific economic activity alone would not bear on interstate commerce in a substantial way, it suffices to trigger the interstate commerce jurisdictional hook of the FAA if the aggregate practice of which that economic activity is a part substantially affects interstate commerce. *Alafabco Inc.*, 539 U.S. at 56–57. Here, Larsen worked as the Executive Vice President and President of Retail Lending. (Larsen Decl. ¶ 5.) In this capacity, he was responsible for "all aspects of [Defendants'] national operations, in addition to overseeing accounting, payroll, human resources, [and] supervising Distributed Retail Loan Officers who are located throughout the United States, and compliance." (Boyd Decl. ¶ 11.) In the aggregate, there is no question that the executive level management of retail mortgage lending has a substantial effect on interstate commerce. Thus, the FAA governs this dispute. Because the FAA preempts all conflicting state law[1] the Court need not consider Larsen's argument (see Opp'n 13:19 – 14:5) that Cal. Lab. Code § 229 entitles him to a judicial forum on his statutory claims even if the Arbitration Agreement is valid.

### III.  VALIDITY OF THE ARBITRATION AGREEMENT

Under the FAA, a Court need consider only two questions to determine whether to compel arbitration: (1) is there a valid agreement to arbitrate? And, if so, (2) does the agreement cover the matter in dispute? *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, there is no dispute as to whether the Arbitration Agreement covers Larsen's claim.[2] Accordingly, the Court need only consider whether the Arbitration Agreement is valid.[3]

---

[1] *See Perry v. Thomas*, 482 U.S. 483, 492 (1987).

[2] Even if there was a dispute, it would be for the arbitrator, not the Court, to decide. The Arbitration Agreement is valid and it provides that "the applicability . . . of this agreement by you to arbitrate, will be resolved by neutral, binding arbitration." (Ex. A.)

[3] Defendants argue that the Court cannot rule on the enforceability or applicability of the Arbitration Agreement because the Agreement provides that such issues must be submitted to the arbitrator. (Defs.' Mot. 3:24–4:22.) However, where, as here, a party challenges the validity of an arbitration agreement

An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under California law, the elements of a valid contract are (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) consideration. Cal. Civ. Code § 1550.  However, a court will not enforce an otherwise valid contract if there exists a viable defense, such as unconscionability.  1 Witkin, Summary 10th (2005) Contracts, § 331, p. 365.  Larsen argues that the Arbitration Agreement is unenforceable because (1) Larsen did not consent to it; (2) Defendants did not provide any consideration in exchange for Larsen's agreement to arbitrate; and (3) the Arbitration Agreement is unconscionable.

### A.     **Mutual Consent**

Larsen argues that he did not consent to the Arbitration Agreement because the Employment Acknowledgment and Receipt Form did not reference a prior employment agreement between him and Defendants that contained a different arbitration agreement. (Opp'n 11:11–12:9.)  The Court disagrees.  Larsen does not cite to any authority for the proposition that a subsequent agreement is valid only if it explicitly references a prior agreement regarding the same general subject, and the Court is unaware of any.  Thus, the dispositive question on this issue is simply whether the parties agreed to the terms of the new Arbitration Agreement, regardless of whether these terms are similar or different from the previous agreement.

Under California law, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." 1 Witkin, Summary 10th (2005) Contracts, § 116, p. 155.  Here, Larsen signed the Employment Acknowledgment and Receipt Form.  In relevant part, the EARF states

---

specifically, as opposed to the employment contract generally, a Court must consider the merits of the challenging party's argument.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

> *I acknowledge that I have read and understand the Employee Dispute Resolution Procedure contained in the Employee Handbook, including the Arbitration Agreement. I agree to the terms of the Arbitration Agreement.* I acknowledge that the Arbitration Agreement is an enforceable contract; that I am waiving the right to pursue claims in court; and that I will accept an arbitrator's award as the final, binding and exclusive determination of all claims covered by the Arbitration Agreement.

(Ex. B.) (emphasis added.) This language is clear and unequivocal in conveying that, by signing, Larsen is agreeing to the provisions of the Arbitration Agreement contained in the Employee Handbook. Thus, because Defendants prepared and presented this document to Larsen and Larsen signed it, the Court finds that the parties mutually consented to the provisions of the Arbitration Agreement.[4]

### B.  Consideration

Larsen argues that Defendants did not provide any consideration in exchange for his agreement to arbitrate. (Opp'n 12:10-13:15.) Instead, Larsen argues that the Arbitration Agreement compels only him to submit claims to arbitration, leaving Defendants free to file their claims in court.

The Court disagrees with this reading of the Arbitration Agreement. In relevant part, the language of the Agreement reads

> . . . except for worker's compensation or unemployment compensation benefit claims, *any and all complaints*, disputes, claims, or causes of action *arising out of*, or related to, *your employment* with the Company or the termination of your employment, including but not limited to, all state and federal statutory employment claims, all contract claims, all tort claims, and all claims regarding the applicability or enforceability of this agreement by you to arbitrate, *will be resolved by* neutral, binding *arbitration*. . . .

---

[4] Larsen also argues that mutual consent is lacking because Defendants did not sign the agreement. (Opp'n 11:19–12:6.) However, Larson does not explain why the lack of Defendants' signature is significant in determining whether Defendants consented to this agreement, and the Court thinks there can be no dispute that Defendants consented to the Arbitration Agreement here. Indeed, it was Defendants who prepared the document and asked Larsen to agree to it.

(Ex. A) (emphasis added.)  The Court reads this language as providing that all claims (other than workers compensation and unemployment claims) arising out of the employment relationship must go to the arbitrator, regardless of which party brings them. Thus, each party agreed to arbitration in consideration for the other doing the same. Accordingly, the Court finds the consideration element satisfied.

### C. **Unconscionability**

Larsen argues that the Arbitration Agreement is unenforceable because it is unconscionable.  (Opp'n 18:22–23:18.)  Unconscionability carries both a procedural and a substantive element, and a court can refuse to enforce a contract or portion thereof as unconscionable only if both are satisfied.  *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000).

"The procedural element generally takes the form of an adhesion contract, which imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 713 (2004).  Here, the Arbitration Agreement was imposed and drafted by Defendants, who, as the employer, appear to be the party of superior bargaining strength.  Further, Defendants do not dispute Larsen's claim that he "never had an opportunity to negotiate the provisions of the Employee Handbook or the language in the Employee Acknowledgment and Receipt Form."  (Opp'n 19:27–20:1.) Accordingly, the Court finds the Arbitration Agreement procedurally unconscionable.

Larsen presents three arguments as to why the Arbitration Agreement is also substantively unconscionable.  "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results, that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner.  To be substantively unconscionable, a contractual provision must shock the conscience."  *Baker v. Osborne Dev. Corp*, 159 Cal. App. 4th 884, 894 (9th Cir. 2008) (internal quotation marks and citations omitted).

First, Larsen argues that the unilateral nature of the Arbitration Agreement compels a finding of unconscionability. Having already concluded that the Agreement requires both parties to submit their claims to arbitration, the Court finds this argument unpersuasive.

Second, Larsen argues that the Arbitration Agreement is substantively unconscionable because it provides for inadequate discovery. (Opp'n 22:5–23:2.) An agreement to arbitrate matters arising out of an employment relationship is lawful only if provides for more than minimal discovery. *Armendariz*, 24 Cal. 4th at 102, 104–6. Larsen argues that the Arbitration Agreement does not provide for adequate discovery because it does not ensure his ability to depose two critical witnesses who are located out of state and no longer employed by Defendants.

The Court disagrees. The parties agreed that any arbitration would be governed by the National Arbitration Forum's Code of Procedure. Rule 29(B)(1) of that code provides that

> a party may seek the disclosure of Documents, sworn answers to not more than twenty-five (25) Written questions, and one or more depositions before a Hearing where; **a**. the information sought is relevant to a Claim or Response, reliable, and informative to the arbitrator; and **b**. the production of the information sought is reasonable and not unduly burdensome and expensive.

(Ex. B [Doc. 13-5] 34.) If, as Larsen contends, the deposition of these two witnesses is critical to his case, Rule 29(B)(1) would appear to allow the arbitrator to issue an order permitting Larsen to depose them. Regardless, the Court finds that the broad scope of discovery permitted by Rule 29(B) amounts to more than "minimal discovery."

Finally, Larsen argues that the Arbitration Agreement is substantively unconscionable because it requires him to incur fees he would not incur if he brought his claim in court. (Opp'n 23:3–18.) The Court agrees. The Supreme Court of California has declared that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the

employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110–11 (emphasis original).  The Arbitration Agreement states

> [y]ou [Larsen] shall bear your own expenses of arbitration, except after you have paid the first $150 for any filing fee, the Company agrees to pay the remainder of the filing fee (up to that filing fee payable for a claim equal to one year's wages for the employee) and for the first two days of any arbitration hearing or session.

(Ex. A.)  Thus, under the Arbitration Agreement, Larsen might have to pay arbitration filing, session, and hearing fees.  If Larsen were able to bring his claims in court, he would not have to incur these types of expenses.  Accordingly, the Court finds the Arbitration Agreement substantively unconscionable inasmuch as it could require him to pay arbitration fees.

However, the Arbitration Agreement contains a severability clause that provides

> If any provision of this arbitration agreement is determined to be void or unenforceable, such provision shall be severed and shall not affect the validity or enforceability of the remainder of this agreement.

(Ex. A.)  Furthermore, "[a] court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." *Armendariz*, 24 Cal. 4th at 122 (*citing* Comment 2 of the Legislative Committee comment on Civil Code § 1670.5).  Because the parties agreed to sever any unconscionable provisions and the Arbitration Agreement is not permeated by unconscionability, the Court strikes the provision of the Arbitration Agreement that requires Larsen to pay any arbitration fees to the arbitrator.  Defendants shall bear all such costs.

//
//

## IV. EXPLICIT WAIVER OF STATUTORY CLAIMS

Larsen contends that, even if there is a valid agreement to arbitrate that covers this dispute, it is inapplicable to his wage claims brought under California Labor Code Sections 202 and 204. (Opp'n 14:6–15:22.) The gist of Larsen's argument is that an arbitration agreement does not apply to statutory claims unless it is "clear and unmistakable" that the parties intended to waive a judicial forum for a specific statutory claim. Further, Larsen seems to contend that such a "clear and unmistakable" intent is not present where, as here, the agreement does not specifically mention each statutory claim to which it applies.

The Court disagrees. Even assuming that an agreement to arbitrate California Labor Code claims must be "clear and unmistakable," the Court finds that Larsen's agreement to the language contained in the Arbitration Agreement evidences such an intent. It is true that this language does not specifically reference California Labor Code Sections 202 and 204. However, these Labor Code sections govern the timely payment of earned wages. The Court finds that there can be no doubt that by agreeing to arbitrate "all state . . . statutory employment claims" the parties clearly and unmistakably agreed to arbitrate Labor Code claims for the untimely payment of earned wages.

//
//
//
//
//
//
//
//
//
//
//
//

V.     CONCLUSION AND ORDER

Because a valid arbitration agreement governs this dispute, the Court **GRANTS** Defendants Motion to compel arbitration.  Accordingly, the Court orders as follows:

1. The provision in the Arbitration Agreement requiring Larsen to bear a portion of the arbitration filing, hearing, or session fees is stricken.  Defendants shall pay the arbitrator's fees.
2. Larsen's Complaint is dismissed without prejudice.

Dated:  March 29, 2016

_____
Hon. M. James Lorenz
United States District Judge